## THE KOOKABURRA.
## THE NEW HAMPSHIRE.

District Court, S. D. New York.
May 25, 1932.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Stanley R. Wright, both of New York City, of counsel), for libelant and cross-claimant.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt and James Mc-Kown, Jr., both of New York City, of counsel), for claimant and cross-libelant.

FRANK J. COLEMAN, District Judge.

The collision occurred on June 7, 1927, at about 7 a. m. at about the middle of the Hudson river off pier 24, Manhattan. The weather was clear with the wind light and both vessels were plainly visible from each other for a long time before the collision. There was no other nearby traffic nor other unfavorable circumstance to account for the accident except gross negligence on the part of one or both of the vessels.

The New Hampshire which was a large sound passenger steamer about 318 feet long had rounded the Battery and came up into the Hudson river with the intention of docking at her pier No. 14, Manhattan. She came up along the Jersey side to a point about opposite pier 24 before commencing to cross to the New York side, because a strong ebb tide would tend to carry her down to her own pier. Her course had been about 900 feet off the Jersey pier heads which was about one-fourth the width of the river. On arriving about opposite pier 24 she put her wheel hard aport and started to swing to starboard.

At that time the Kookaburra, a steam lighter, was coming down at about midstream from Edgewater, N. J., with the intention of docking at pier 2, Manhattan. She was between 1,500 feet and half a mile distant when the New Hampshire started to swing to starboard. She continued on her course and the New Hampshire continued her turning operation without any exchange of signals, until the New Hampshire partially crossed the other's course and was struck a heavy blow at right angles, the Kookaburra's stem hitting the other's port side near the bow. Substantial damage was done to both vessels.

The New Hampshire's speed during the turning operation was four or five knots an hour and her engines alternated between slow and stop. Her helm was always aport, but in varying degrees, and her course to starboard was not uniform. When she started to turn she blew a one blast signal to the Kookaburra to which the latter made no reply, though it was answered by another vessel. Thereafter the New Hampshire gave no other signal while the Kookaburra approached for a distance of almost half a mile, until they were separated by only 125 or 150 feet, and it was too late to avoid the collision, when the New Hampshire blew one long blast. Aside from the original signal, which was unanswered, there was nothing to indicate to the Kookaburra whether the New Hampshire was going to pass across her bow or under her stern.

It seems to me that the New Hampshire was plainly negligent in leaving a course which would have permitted a starboard to starboard passing with ample space between, and turning into the path of the on-coming vessel without getting an exchange of signals to indicate that the Kookaburra knew the crossing was to be in front rather than astern of her. Before beginning the maneuver the New Hampshire should have known that she could not complete it without collision unless the Kookaburra either changed her course or stopped her engines; yet she was content to proceed without any precaution except the blowing of one whistle which remained unanswered, and neither reversed her engines nor attempted to steer clear as the Kookaburra approached with speed and course unchanged.

It is equally plain that the Kookaburra was also at fault. She was proceeding at a rate of eight or nine knots an hour without any lookout or any one in the pilot house except the captain. He was negligent in either not hearing the New Hampshire's one blast signal or in disregarding it, and an adequate lookout might have prevented that. Furthermore, he was negligent in not initiating an exchange if he did not hear the New Hampshire's signal, and in proceeding without a change of speed or of course into a position of danger without knowing what the New Hampshire's intention was. The river was clear on both sides and there was no adequate reason for his steering so close to a steamer which was turning in midstream.

Accordingly, an interlocutory decree is directed in each case in favor of libelant for half damages.